***E-FILED - 11/30/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. WOODS,<br><br>    Petitioner,<br><br>  v.<br><br>BEN CURRY, Warden,<br><br>    Respondent. | No. C 08-4749 RMW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding pro se, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2007 decision by the California Board of Parole Hearings ("Board") finding him unsuitable for parole. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition for a writ of habeas corpus is **DENIED**.

### BACKGROUND[1]

On October 13, 1980, James Burrell, Troy Burrell, Curtis, and petitioner, robbed a bar. (Tr. at 22-23.) They ordered two customers to lie on the ground and give up their wallets. (Id. at 22.) The bartender was ordered to open the cash register. (Id.) As the bartender walked around

---

[1] The relevant facts are taken from the transcript of the May 7, 2007 Subsequent Parole Consideration Hearing. (Petition, Ex. D ("Tr.").)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Woods749hc.wpd

the bar, one of the robbers hit him on the head with the butt of a gun. (Id.) When the robbers turned to leave the bar, the last of the four men fired his shotgun, hitting Donald Dumas in the head. (Id. at 23.) Dumas died instantly. (Id.)

On April 22, 1981, Max Wallace was robbed when he came home from work by two masked men. (Id. at 23-24.) One of the men had a gun and the other had a club. (Id. at 24.) The robbers took $150 from him. (Id.) At some point, one of the robbers struck Wallace in the face with the butt of his gun. (Id.)

On July 28, 1981, petitioner, who was in custody, offered that James and Tony Burrell, Chris Turner, and Arthur Williams were the robbers at the October 13 incident, and petitioner was paid to drive from Indio to Thousand Palms where he dropped them off. (Id. at 25.) Petitioner alleged that when he returned to pick up the four robbers, James Burrell bragged about shooting someone at the bar, but petitioner did not believe him. (Id. at 26.)

On February 3, 1982, after petitioner was found guilty of first degree murder and robbery with the use of a firearm, he was sentenced to 26-years to life. (Petition at 2.) Petitioner filed unsuccessful state habeas petitions in all three levels of state court, challenging the denial of his parole. Petitioner thereafter filed the instant petition.

## DISCUSSION

A.  Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

1	A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, that is, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340.  Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).  In this case, the last reasoned opinion is that of the superior court denying petitioner's habeas petition. (Petition, Ex. A.)

B.	May 7, 2007 Board Hearing

Petitioner had been incarcerated for approximately twenty-six years at the time of his 2007 parole suitability hearing.  Petitioner's minimum parole eligibility date was November 29, 1997, and the 2007 hearing was his fourth parole eligibility hearing.  Petitioner opted not to discuss the life crime, but he did accept responsibility for it. (Tr. at 26.)  Petitioner believed that his involvement in the crimes resulted from stress he was undergoing in his life because of a

"messy" divorce from his wife. (Id. at 26-29, 33.)

Petitioner had no criminal history as a juvenile. (Id. at 35.) On November 19, 1974, petitioner was arrested for possession of marijuana and the manufacture, sale, or possession of a firearm. (Id. at 36.) Petitioner received 12 months probation and a fine. (Id.) Then, on January 23, 1975, petitioner was arrested for carrying a concealed weapon and having a controlled substance for sale. (Id. at 38.) Petitioner pleaded guilty and was sentenced to 12 months probation and a fine. (Id.) Then, on September 29, 1980, petitioner was arrested for buying and selling articles with the identification removed. (Id.)

Regarding his family history, one of petitioner's brothers is undergoing substance abuse rehabilitation. (Id. at 40.) Petitioner's youngest brother died in 2005 of an overdose. (Id.) Petitioner's sister and father have also passed. (Id. at 40-41.) Petitioner has since re-married after his divorce from his first wife became final. (Id. at 47.) Petitioner has a history of marijuana abuse. (Id. at 48.) He also had used a little valium in the past, but denied using alcohol. (Id.)

Regarding post-conviction factors, the Board noted that petitioner has the lowest possible classification score with his life crime. (Id. at 50.) Petitioner received an administrative 115 in June 2003 for disobeying a direct order. (Id. at 52-53.) Before that, petitioner had two serious 115 disciplinaries, the last one in 1989 for possession of marijuana. (Id. at 53.) Petitioner has received six negative chronos, the last of which occurred in July 2002 for theft of state property. (Id. at 53-54.) In 1991, petitioner scored an 8.1 on his TABE test, placing him at an 8th grade level even though he completed high school in 1973. (Id. at 56.) When asked why he hadn't upgraded academically while incarcerated for over 25 years, petitioner merely responded that he had thought about it, but he felt that he needed to concentrate more on self-help and therapy. (Id. at 56-57.) Regarding vocations, while petitioner participated in shoe repair and laundry, he had not received a certificate of completion for any vocation. (Id. at 62-66.)

In 2005, petitioner participated in a 12-week anger management course as well as a program called "Ancient Choirs." (Id. at 67-68.) Petitioner had substance abuse therapy through the Mental Health Delivery System in 1991 and 1992. (Id. at 70.) Petitioner had also

1 participated in AA, beginning in 1993. (Id. at 69, 85.) Petitioner was able to recite and apply
2 Steps 8 and 9, although he did not know the name of the victim of the life crime. (Id. at 71-72.)
3 Petitioner also received chronos for completing Forty Days of Purpose and participating in the
4 Protestant Choir. (Id. at 73-74.)

5       The most recent psychological evaluation for petitioner was completed in 2007 and
6 diagnosed petitioner with a prior psychiatric diagnosis of marijuana abuse in sustained, full
7 remission. (Id. at 76.) The evaluator opined that petitioner's violence potential within a
8 controlled setting was below average as compared to the inmate population. (Id.) Petitioner's
9 parole plans consisted of living with his wife in Palm Springs, and working for his brother, a
10 retired police officer who was currently a real estate investor/broker. (Id. at 89-93.)

11       The Board denied parole. It found that the offense was carried out in a cruel and callous
12 manner; that multiple victims were attacked; and that the motive -- money and stress from a
13 divorce -- was trivial in relation to the crime. (Id. at 114-16.) The Board also noted that
14 petitioner had been involved in an escalating pattern of criminal conduct and failed from several
15 grants of probation. (Id. at 116-17.) It also found that petitioner demonstrated a very limited
16 amount of programming while incarcerated, and that, while petitioner had some gains, those
17 gains were fairly recent. (Id. at 117.) In addition, the Board observed that, due to a hazy
18 memory, petitioner was unable to remember his prior crimes, and suggested that it might be due
19 to petitioner's unwillingness to learn his lessons. (Id.) The Board also observed that petitioner
20 failed to develop any marketable skills, even after previous Board panels have suggested that he
21 improve those skills. (Id.) The Board suggested that while petitioner appeared to be putting his
22 life together, he failed to "demonstrate a positive change." (Id.) The Board pointed out that
23 petitioner suffered a 128 chrono as recently as 2002 and an administrative 115 for disobeying a
24 direct order as recently as 2003. (Id. at 117-18.) Finally, the Board did not rely on the 2007
25 psychological evaluation because it found the report to be inconclusive and contradictory. (Id.)

26 C.    State Court Decisions

27       Petitioner filed a state habeas petition in superior court. In denying the petition, the state
28 court concluded that because petitioner had done well in prison and was not the shooter in the

life crime, he should be released. (Petition, Ex. A at 1.) However, the court noted that the Board has wide discretion to grant or deny parole. (Id.) As a result, the court found that the Board did not abuse its discretion in denying parole. (Id.) The California Court of Appeal and California Supreme Court both denied petitioner's subsequent state habeas petitions.

D.      Analysis

The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the absence of some evidence of his or her "current dangerousness." Hayward v. Marshall, 603 F.3d 546, 555, 561 (9th Cir. 2010) (en banc). Under California law, however, "some evidence" of current dangerousness is required in order to deny parole. Id. at 562 (citing In re Lawrence, 44 Cal. 4th 1181, 1205-06 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)). This requirement gives California prisoners a liberty interest, protected by the federal constitutional guarantee of due process, in release on parole in the absence of "some evidence" of current dangerousness. Cooke v. Solis, 606 F.3d 1206, 1213-1214 (9th Cir. 2010).

When a federal habeas court in this circuit is faced with a claim by a California prisoner that his right to due process was violated because the denial of parole was not supported by "some evidence," the court analyzes whether the state court decision reflects "an 'unreasonable application'[] of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); see Cooke, 606 F.3d at 1213. California's "some evidence" requirement was summarized in Hayward as follows:

> As a matter of California law, "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hawyard, 603 F.3d at 562 (quoting Lawrence, 44 Cal. 4th. at 1191, 1210-14); see Cooke, 606 F.3d at 1213-1214 (describing California's "some evidence" requirement).

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Woods749hc.wpd          6

1    Here, a primary, though not exclusive, basis for the Board's determination of parole
2 unsuitability was the nature of the commitment offense. The life crime fits three of the
3 regulations' criteria for determining that it was committed in an especially heinous, atrocious or
4 cruel manner. There was evidence that it was "carried out in a dispassionate and calculated
5 manner," § 2402(c)(1)(B), in that petitioner and his co-defendants went to a business, armed
6 with firearms, and the victim was shot at close range as the robbers were leaving the
7 establishment, although petitioner did not do the actual shooting. Petitioner's role in the crimes
8 was for a very "trivial" motive, § 2402(c)(1)(E), i.e., money and stress from a "messy" divorce.
9 Moreover, multiple victims were involved in these incidents, § 2402(c)(1)(A) -- specifically, not
10 only were there two robberies on different dates, but there was more than one victim whose
11 money was stolen at the business establishment.

12    Significantly, the murder was not the only reason for the unsuitability finding. Even aside
13 from the fact that the commitment offense was especially cruel, was committed for a trivial
14 motive, and involved multiple victims, there was other evidence that reasonably demonstrated
15 petitioner was still a current threat to society if released. There was evidence in petitioner's
16 "pre-incarceration behavior," which demonstrated an escalating pattern of criminal behavior in
17 his adult criminal history, even after being given several opportunities at probation. Further, his
18 "post-incarceration" record revealed a significant lack of academic and vocational
19 improvements, which made it unclear how petitioner planned on supporting himself or
20 establishing a degree of self-sufficiency.

21    Certainly, a considerable amount of time had passed since the commitment offense.
22 Petitioner's lengthy incarceration and his recent, but limited, self-help and therapy programming
23 count in his favor, but it cannot be said that at this point they compel a finding of suitability.
24 There was some evidence to support the Board's findings on the commitment offense, criminal
25 history, and need for programming, and those circumstances were probative of and provided
26 reliable evidence of petitioner's current dangerousness. These factors indicated "that the
27 implications regarding the prisoner's dangerousness that derive from his [ ] commission of the
28 commitment offense remain probative of the statutory determination of a continuing threat to

1  public safety." See Lawrence, 44 Cal.4th at 1214.  The state court's rejection of petitioner's
2  petition was not an unreasonable application of California's "some evidence" requirement and
3  was not based on an unreasonable determination of the facts in light of the evidence.  Petitioner
4  therefore is not entitled to federal habeas relief.

## CONCLUSION

6  The petition for a writ of habeas corpus is DENIED.  Rule 11(a) of the Rules Governing
7  Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a
8  certificate of appealability in the same order in which the petition is denied.  Petitioner has failed
9  to make a substantial showing that his claims amounted to a denial of his constitutional rights or
10 demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong.  Slack
11 v. McDaniel, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is
12 warranted in this case.

13 The clerk shall enter judgment and close the file.

14 IT IS SO ORDERED.

15 DATED: 11/30/10

*Ronald M. Whyte*
RONALD M. WHYTE
16 United States District Judge